ZIEGLER CHEMICAL AND MINERAL CORPORATION, a corporation of New York, Appellant,

v.

AMERICAN GILSONITE COMPANY, a corporation of Delaware, Appellee.

No. 18839.

United States Court of Appeals
Ninth Circuit.

May 27, 1964.

George B. White and Alfons Puishes, San Francisco, Cal., for appellant.

Francis R. Kirkham, Thomas E. Haven, H. Helmut Loring, Pillsbury, Madison & Sutro, San Francisco, Cal., for appellee.

Before ORR, BARNES and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant instituted an action in the District Court against appellee and certain other defendants for violations of the antitrust laws, for injunctive relief, and for declaratory judgment under the patent laws. Appellee filed an answer and a counterclaim stating several claims for relief, including the two involved in this appeal. The first and second causes of action of the counterclaim sought the same relief on alternative theories of liability, and alleged in the first cause of action an account stated in the amount of $9,136.00 owing from appellant to appellee, and in the second cause of action a promise by appellant, supported by valuable consideration, to pay such amount to appellee and that appellant had not paid any part of such amount.

In answer to said causes of action in the counterclaim appellant admitted the execution of certain documents, admitted demand and non-payment, but denied generally the remaining allegations of said causes of action.

Appellee moved for summary judgment on these two causes of action under Rules 54(b) and 56, Federal Rules of Civil Procedure, which motion was supported by affidavits and exhibits attached thereto. Appellant opposed the motion, supported by affidavits and attached exhibits. Following oral argument the District Court granted appellee's motion for summary judgment upon said causes of action for the single sum of $9,136.00, together with interest. Judgment was entered accordingly. The District Court, pursuant to the provisions of Rule 62(h) of Federal Rules of Civil Procedure, stayed enforcement of the judgment until entry of a judgment upon appellant's complaint, upon the filing of a satisfactory bond in an amount to be approved by the District Court. Such bond was filed and approved. This appeal relates solely to said summary judgment.

It appears that during the period under review both appellant and appellee mined and sold gilsonite, a natural asphaltic substance found in certain areas in Utah and Colorado, and that since 1954 appellee has been the owner of a patent on the use of gilsonite in insulating underground hot pipes.

The affidavit of E. F. Goodner, who was at all pertinent times the chief executive officer of appellee, states in substance: That appellee, early in 1954, became aware that appellant's predecessor was selling Gilsonite which was being used in the practice of appellee's patent, issued February 2, 1954, without license from appellee; that in July of 1954, appellee offered appellant's predecessor an agreement substantially in the form which was executed on April 10, 1958, under which appellant's predecessor would have been authorized to license the users of its Gilsonite to practice American's patent;[1] appellant's predecessor declined the offer, which was thereafter renewed from time to time conditioned on an agreement to pay "equivalent back royalties" on sales prior to execution of the agreement; that appellee, early in 1958, commenced two actions against appellant's customers for infringement and obtained judgments in its favor; that while these actions were pending the general manager of appellant's predecessor telephoned Goodner and sought assurance that on payment of royalties appellee would not sue Esso Standard Oil Company, one of appellant's customers; Goodner refused to give such assurance unless appellant would accept the renewed offer to enter into the license agreement and would also promise in writing to pay back royalties; that on April 10, 1958, the license agreement was executed and the manager of appellant sent to Goodner the following letter, dated April 10, 1958:

> "In line with our telephone conversation just now this is to confirm our willingness to pay you back royalties wherein we sold Gilsonite for underground pipe insulation.
> "I appreciate you [sic] willingness to give us a little time to do this and we will offer a payment plan for your approval shortly.";

that upon receipt of this letter, Goodner instructed an officer of appellee to inform Esso Standard Oil Company that the promise to pay back royalties would remove any possible infringement of appellee's patent. The letter, bearing date April 14, 1958, is as follows:

> "At the request of the G. S. Ziegler & Company, we are writing you to state that they have agreed to pay us the royalties due on all past installations of their Tri-sul-ite. If you have such an installation, their payment to us will remove any infringement which may now exist.

---

1. The royalty provided for in the agreement ultimately executed was $8.00 per ton.

"They have also arranged with us for the rights under our U. S. Patent 2,668,125 to extend the rights to practice the inventions of this patent on all future installations."

On December 15, 1958, the sales manager of appellant wrote the following letter to appellee:

"Mr. E. H. Owen, Secretary-Treasurer

American Gilsonite Company

134 Broadway

Salt Lake City 1, Utah

    Re: Patent 2,668,125

Dear Mr. Owen:

"At long last we have completed our work with regard to determining the back royalties due you under the above patent.

"According to our records, the total comes to $9,136.00 covering the period 1954 to the end of February, 1958, since which time, as you know, we have been reporting and paying monthly. Our yearly tonnage figures were as below:

| 1954 | 40 | tons at $8 | $ 320.00 |
|------|------|------|------|
| 1955 | 28 | " | 224.00 |
| 1956 | 180 | " | 1,440.00 |
| 1957 | 773 | " | 6,184.00 |
| 1958 | 121 | " | 968.00 |
|  | 1142 | " | $9,136.00 |

"What with all the expenses incurred this year with respect to our TRI-SUL-ITE Division, we would like to defer putting these back royalties on our books until next year, and for which reason we hope you will not mind our setting this up for payment in January of next year.

"With our best wishes for a MERRY CHRISTMAS and a HAPPY NEW YEAR, I am

    "Very truly yours

    G. S. ZIEGLER & COMPANY

    O. G. Clement

    O. G. Clement

      Sales Manager"

---

We agree with the District Court that there is no genuine issue of material fact on the issues raised by the counter-claim.

The counter-affidavits admit the genuineness of the letters of April 10, and December 15, 1958; admit, by failure to deny, the telephone conversation between Goodner and Ziegler; and admit that appellant executed the license agreement "and to pay such royalties on previous sales in amounts to be agreed upon by the parties in order to avoid continuous harassment to its customers". The contentions in the affidavits that the letter of December 15, 1958 was an "estimate" and that the figures contained in the letter of December 15, 1958 were "subject to offsets" for expenses caused to appellant as a result of the harassment of its customers are refuted by the contents of the letter. Appellant's undisclosed reason for executing the license agreement and sending the letter of April 10, 1958, in which appellant confirmed its unqualified willingness to pay back royalties, and its undisclosed intent to claim

offsets under its letter of December 15, 1958, are not relevant and create no genuine issue of material fact on the issues before the District Court. Statements in the counter-affidavits that appellee never acquiesced in the amount stated in the letter of December 15, 1958, because it demanded and made audits of appellant's books are without substance, and create no issue of fact, since it is clear that such audit was for the purpose of determining royalties due subsequent to the execution of the license agreement and such audit did not relate to the back royalties set forth in the letter of December 15, 1958.

The record discloses that appellee never objected to or disputed in any way the correctness of such statement of account, and later demanded, in writing, payment of the sum of $9,136.00. As stated in Corbin on Contracts, Vol. 6 (1962 Ed.) § 1313, at page 268:

"[I]f the debtor renders a statement of account that purports to be an accurate computation of items that are themselves neither doubtful nor disputed, his action in so doing is an evidential admission and also justifies the inference that he promises to pay the amount so admitted to be due.

"If when the debtor renders his statement of account he promises, either expressly or impliedly, to pay the amount therein stated, his promise is binding from the time that it is made, insofar as the statement is correct. To make it thus 'binding' on the debtor, no assent by the creditor is necessary."

Clearly, appellant's unqualified promise to pay said sum of $9,136.00 is supported by consideration. We need not determine whether appellant's liability is founded upon what is customarily referred to as an "account stated", or on an independent promise to pay supported by consideration because in either event the entry of the judgment in appellee's favor is proper.

We have considered all matters raised by appellant on this appeal, not discussed in this opinion, and find them to be without merit.

The judgment appealed from is affirmed.